NATIONAL REPUBLICAN CONGRES-
SIONAL COMMITTEE, an unincorpo-
rated association, et al., Appellants,

v.

LEGI–TECH CORPORATION
(Two cases).

Nos. 85–6037, 85–6041.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 10, 1986.

Decided July 15, 1986.

Jan W. Baran, with whom Bruce G. Jo-
seph and Carl R. Frank, Washington, D.C.,
were on brief, for appellants.

Bruce D. Sokler, with whom Thomas J.
Casey and Terrence J. Leahy, Washington,
D.C., were on brief, for appellee.

Before STARR and SILBERMAN, Cir-
cuit Judges and WRIGHT, Senior Circuit
Judge.

Opinion for the Court filed by Circuit
Judge STARR.

Concurring opinion filed by Senior Cir-
cuit Judge J. SKELLY WRIGHT.

STARR, Circuit Judge:

This is an appeal from the District
Court's judgment dismissing the copyright
infringement and common-law misappropri-
ation action filed by the National Republi-
can Congressional Committee (NRCC or
Committee) against Legi-Tech Corporation
for the copying, adaption and distribution
of campaign contribution information on
public file at the Federal Election Commis-
sion (FEC or Commission). Because this
case presents a question that falls within
the primary jurisdiction of the FEC to in-
terpret the Federal Election Campaign Act
(FECA),[1] we postpone consideration of this
matter until the Commission has had an
opportunity to express its views on the
FECA issue.

I

The National Republican Congressional
Committee is a non-profit, political associa-

1. Pub.L. No. 92–225, 86 Stat. 3 (1971) (current
amended version principally codified at 2 U.S.C.
§§ 431–455 (1982)).

tion that supports Republican Party candidates for election to the United States House of Representatives. NRCC's primary activity is fundraising. Its principal business asset is its list of donors, created through an expensive and laborious process of targeting and soliciting likely contributors.

FECA requires the Committee to file with the Commission a list of the names and addresses of all contributors who donated more than $200 in any year. 2 U.S.C. § 434(b)(3)(A) (1982). The Commission, in turn, has a statutory obligation to make these lists promptly available for public inspection and copying, subject only to the limitation "that any information copied from such reports or statements may not be sold or used by any person for the purpose of soliciting contributions or for commercial purposes." 2 U.S.C. § 438(a)(4) (1982).[2]

Legi-Tech Corp. collects and transmits legislative and political information to subscribers over telecommunication facilities, so as to make large amounts of information accessible in a convenient, computerized form. When Legi-Tech began operations in 1981, it offered its services in California and New York, providing summaries of state legislation, recorded votes on bills and attendance records of state legislators. Legi-Tech's clients included newspapers, political parties, lobbyists, corporations, local governments, state agencies and trade associations. At the request of newspaper clients, Legi-Tech added to its data base publicly available information concerning political contributions to state legislators.

In 1985, Legi-Tech decided to expand its electronic information services to include public data concerning the federal government. The Campaign Contribution Tracking Service (CCTS or Tracking Service),

which is the subject of this litigation, provides subscribers with computer access to all campaign contribution reports on file at the FEC.[3] The software on the CCTS system permits information to be requested in a wide variety of formats and thus enables customers to target their searches according to their specific needs.[4]

In September 1985, NRCC learned of Legi-Tech's plans to offer the Tracking Service and include as part of its data base the Committee's donor lists on file at the Commission. NRCC promptly sought a copyright registration for its FEC donor lists. After some hesitation, the Copyright Office issued certificates of registration while noting "the Office's uncertainty and desire for judicial guidance on the copyrightability of compilations of data." Joint Record Excerpts (JRE) at 67. On September 27, 1985, NRCC filed suit in federal district court against Legi-Tech, seeking relief under both the federal Copyright Act and the common law of misappropriation.

On October 15, 1985, the District Court issued an oral ruling denying NRCC's motion for preliminary injunctive relief. The District Court concluded that "[i]t would totally frustrate the Federal Election Campaign Act ... to avoid disclosure by copyrighting the very facts that are required to be filed in the public interest." JRE at 9–10. A week later, upon the parties' stipulation, the District Court issued a final judgment rejecting all the Committee's claims. On October 24, 1985, the Committee filed a complaint with the Federal Election Commission concerning Legi-Tech's Tracking Service. The next day, NRCC appealed the District Court's order to this court.

## II

Before us, the Committee argues at length that the District Court erred in con-

---

**2.** The "commercial purposes" prohibition does not apply to the use of "the name and address of any political committee to solicit contributions from such committee." 2 U.S.C. § 438(a)(4) (1982).

**3.** In addition, Legi-Tech supplements the data available from the FEC by including the phone

numbers for about half the donors listed in FEC reports.

**4.** Legi-Tech includes a warning on its sales materials and data base informing customers of the solicitation- and commercial-purposes prohibition contained in FECA.

cluding that FECA authorizes Legi-Tech's challenged activity. *See* Brief for Appellant at iii, 2, 13–19, 24–25, 28–30; Reply Brief for Appellant at 1–2, 4–5, 18–22. Appellant seeks to persuade us that Legi-Tech's commercial use of donor lists filed with the Commission not only is unauthorized but is in fact expressly prohibited by FECA. In making this argument, the Committee relies, among other things, upon the language, legislative history and underlying purpose of FECA and the regulations and decisions of the Commission interpreting that statute. NRCC would have us decide that whatever license to copy is provided by FECA, the statute clearly proscribes Legi-Tech's "wholesale commercial copying." Brief for Appellant at 19.

We are unconvinced, however, that "there is no risk ... that [copyright] protection of NRCC's compilations is inconsistent with the FECA." Reply Brief for Appellant at 4–5. The language of FECA plainly evinces Congress' intent that campaign contribution reports on file with the FEC be "available for public inspection ... and copying." 2 U.S.C. § 438(a)(4). Inasmuch as Congress expressly provided in FECA for public dissemination of the precise type of compilation at issue here, the provisions of the Copyright Act relied upon by NRCC, dealing with compilations generally, must be construed in a manner that will accommodate the Federal Election Campaign Act. *See generally MacEvoy Co. v. United States*, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling." (citation omitted)). Such an interpretation of the Copyright Act seems particularly justified in light of the equitable doctrine of fair use, which permits limitation on copyright "for purposes such as criticism, comment, [and] news reporting." 17 U.S.C. § 107 (1982); *see Financial Information, Inc. v. Moody's Investors Service, Inc.*, 751 F.2d 501, 507–08 (2d Cir.1984) ("[T]he fair use doctrine 'offers a means of balancing the exclusive

right of a copyright holder with the public's interest in dissemination of information affecting areas of universal concern....' " (citations omitted)).

Thus, NRCC's copyright action must fail if Legi-Tech's use of FEC reports is authorized by FECA.[5] Notwithstanding NRCC's arguments to the contrary, we conclude that FECA is ambiguous with respect to whether commercial activity like Legi-Tech's Tracking Service is protected. The statutory proscription of use of public campaign contribution reports for "soliciting contributions or for commercial purposes" arguably applies to any individual or organization that sells information obtained from FEC reports for a profit, including Legi-Tech. Such an expansive interpretation, however, would bar newspapers and other commercial purveyors of news from publishing the information contained in those reports under any circumstances. Such a result would obviously impede, if not entirely frustrate, the underlying purpose of the *disclosure* provisions of FECA. *See Buckley v. Valeo*, 424 U.S. 1, 66–68, 78, 82, 96 S.Ct. 612, 663, 664, 46 L.Ed.2d 659 (1976); *see also* S.Rep. No. 689, 93d Cong., 2d Sess. 1–2 (1974). In enacting FECA, Congress sought "to promote full disclosure of campaign-oriented spending to insure both the reality and the appearance of the purity and openness of the federal election process." *Buckley*, 424 U.S. at 78, 96 S.Ct. at 663 (footnote omitted). We are most reluctant to construe an exception to the FECA disclosure requirements so broadly as to vitiate the more general statutory mandate of public disclosure.

Moreover, the legislative history of the "commercial purposes" proviso unequivocally indicates that Congress intended a narrower proscription. In particular, the brief history of the "commercial purposes" floor amendment reveals that it was intended to protect campaign contributors from the barrage of solicitations they would receive if "list brokers" were allowed to sell donor lists on file at the FEC. 117 Cong.

---

5. NRCC's common-law misappropriation action would, *a fortiori*, also fail.

Rec. 30,057–58 (1971). The sponsor of the amendment, Senator Bellmon, expressly indicated that it would not prohibit newspapers from publishing lists of contributors. *Id.* at 30,058; *see also FEC Advisory Opinion 78: Campaign Use of Expenditure Information,* FED. ELECTION CAMP. FIN. GUIDE (CCH) § 5530 (1980) ("The prevention of list brokering, not the suppression of financial information, is the purpose of 2 U.S.C. § 438(a)(4) and [the implementing regulation of the commission]."). Senator Cannon, a co-sponsor of FECA, accepted the amendment, noting that it had "a laudable objective" but questioning how effectively it could be enforced. 117 Cong.Rec. at 30,057.

Based on our examination of the legislative history of the proviso and the general purpose of FECA as a whole, we understand Congress to have "left a gap for the [FEC] to fill" in determining what commercial activities fall within the proviso's prohibition (actively akin to that of a list broker) and what commercial activity is not proscribed (activity akin to that of a newspaper). *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *see also FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 37, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981). Under these circumstances, a court may not substitute its construction of a statutory provision for a reasonable interpretation by the agency charged with administering the statute. *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782; *Democratic Senatorial Campaign Committee,* 454 U.S. at 39, 102 S.Ct. at 46.

The Commission has not yet squarely addressed the status under FECA of services like CCTS. More generally, the Commission has promulgated a regulation stating that

The use of information, which is copied or otherwise obtained from reports filed [with the FEC], in newspapers, magazines, books or other similar communications is permissible as long as the principal purpose of such communications is not to communicate any contributor information listed on such reports for the purpose of soliciting contributions or for other commercial purposes.

11 C.F.R. § 104.15(c) (1985).

At this juncture, it is unclear to us whether Legi-Tech's activities are protected by this regulation. The record before us fails to identify the subscribers to Legi-Tech's new Tracking Service. Furthermore, we do not know whether the FEC would deem Legi-Tech's communications to be "similar" to those of a newspaper or how the FEC would apply its "principal purpose" test to these facts. In light of the deference that must be accorded the FEC's interpretation of its own statute (and indeed its own regulation), any attempt on our part to resolve the present controversy would require judicial speculation as to the Commission's views.

To be sure, the Copyright Act provides us with a basis for resolving this controversy. But it is also well settled that "courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved." *Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 68, 91 S.Ct. 203, 208, 27 L.Ed.2d 203 (1970) (citations omitted). Considerations of uniformity in the application of law, efficient use of judicial resources, and appropriate deference to Congress' mandate to the FEC combine to lead us here to invoke the equitable doctrine of primary jurisdiction and stay our hand until the FEC has had an opportunity to speak to this question. *See generally Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 303–04, 96 S.Ct. 1978, 1986–87, 48 L.Ed.2d 643 (1976); *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 63–65, 77 S.Ct. 161, 164–66, 1 L.Ed.2d 126 (1956); 4 K. Davis, *Administrative Law Treatise,* Ch. 22 (2d ed.1983). Our limited review function is not rationally exercised by attempting to predict how the FEC would resolve this matter, *see Far East Conference v. United States,* 342

U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952), especially when the identical controversy is already pending (at NRCC's behest) before the Commission, *see FPC v. Louisiana Power & Light Co.,* 406 U.S. 621, 647, 92 S.Ct. 1827, 1841, 32 L.Ed.2d 369 (1972). More important, our decision to postpone consideration is warranted in light of Congress' explicit decision to vest the Commission with "primary jurisdiction" over civil enforcement of FECA.[6] *Buckley,* 424 U.S. at 112 n. 153 96 S.Ct. at 679 n. 153 (citing 2 U.S.C. § 437c(b)); *see Democartic Senatorial Campaign Committee,* 454 U.S. at 37, 102 S.Ct. at 44; *cf. United States v. Philadelphia National Bank,* 374 U.S. 321, 353, 83 S.Ct. 1715, 1736, 10 L.Ed.2d 915 (1963) (primary jurisdiction "requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme" (citations omitted)). Under these circumstances, we see no reason not to heed the salutary principle that "statutes agencies administer should be interpreted by the agencies before the courts interpret them." 4 K. Davis, *supra,* § 22:5, at 95 (emphasis deleted).[7]

Finally, Legi-Tech contends that we may pretermit the FECA issue entirely because the NRCC's donor lists are, in Legi-Tech's view, entirely outside the protections afforded by the Copyright Act. As the Copyright Office itself observed, however, the copyrightability of compilations of data is a highly uncertain area of the law which has divided courts and commentators alike. *See, e.g., Hutchinson Telephone Co. v. Frontier Directory Co.,* 770 F.2d 128 (8th Cir.1985) (following line of cases holding telephone directories to be copyrightable); *Moody's Investors Service,* 751 F.2d at 504–07 (discussing "opposing lines of cases and competing theories advanced by commentators" regarding copyrightability of compilations of data). We believe it unwise to add yet another voice to the current copyright cacophony when resolution of this issue may prove entirely unnecessary.

We therefore hold this case in abeyance pending an opportunity for the FEC to interpret the "commercial purposes" proviso as applied to Legi-Tech's Tracking Service.[8]

*So Ordered.*

J. SKELLY WRIGHT, Senior Circuit Judge, concurring:

I agree that this case should be held in abeyance pending the Federal Election Commission's (FEC) interpretation of the Federal Election Campaign Act (FECA). I write separately, however, to note two issues of special concern.

First, in deciding the scope of the FECA ban on commercial exploitation, the FEC should remain cognizant of the important and troubling First Amendment implications raised by any construction of the statute that bars the use of the information at issue in this case by organizations such as Legi-Tech.

Second, I am troubled by the implication that the National Republican Campaign Committee (NRCC) may pursue its copyright remedies at the same time it pursues its administrative remedies under FECA. In crafting the requirements for adminis-

---

**6.** All civil actions to enforce FECA are subject to initial determination by the Commission. 2 U.S.C. §§ 437c(b)(1), 437d(e) (1982).

**7.** If we were to decide the FECA issue now, it might be argued that the judiciary would thereby preclude the Commission from adopting a contrary but reasonable interpretation of the statute that it is charged with administering. We obviously need not address or decide this issue, but merely note that such a preclusion would arguably violate the spirit, if not the letter, of *Chevron.* Alternatively, if the Commission were free to reject our interpretation and proceeded to do so, the untoward result would be the inconsistent application of FECA. *Cf. Far Eastern Conference,* 342 U.S. at 574, 72 S.Ct. at 494 (judicial deference to agency's primary jurisdiction secures "[u]niformity and consistency in the regulation of business entrusted to a particular agency").

**8.** Even if the FEC's resolution of NRCC's administrative complaint fails to provide such an interpretation, it is possible that the FEC's views on the matter might be obtained through an advisory opinion. *See* 2 U.S.C. § 437f(a) (1982).

trative review of alleged violations of FECA, Congress might well have thought that the newly-created scheme would be the exclusive remedial scheme with which to enforce the strictures of FECA. *See* 2 U.S.C. § 437d(e). If we find that the NRCC may nonetheless pursue its copyright claims in federal court regardless of its administrative remedies, we would have effectively created a private enforcement scheme. Whether Congress intended to permit such private enforcement seems doubtful in light of the explicit limitations on liability imposed by the Act. *See id.* § 437g(a)(6)(A) (civil penalty limited to $5,000 or the amount of the contribution or expenditure involved in the violation); *id* § 437g(a)(6)(C) (civil penalty for willful violations limited to $10,000 or 200% of the amount of the contribution or expenditure involved in the violation).

This issue, however, need not be confronted by the court at this point. Should the Commission conclude that appellee's use of the lists is not barred by the FECA commercial exploitation prohibition, the court need not reach the issue whether the FEC enforcement scheme is exclusive. At that point, "NRCC's copyright action must fail [because] Legi-Tech's use of FEC reports is authorized by FECA." Opinion for the court at 6 (footnote omitted). The issue on the merits would then be clear, allowing this court to pretermit the more difficult jurisdictional question. *See Secretary of the Navy v. Avrech,* 418 U.S. 676, 678, 94 S.Ct. 3039, 3040, 41 L.Ed.2d 1033 (1974) (*per curiam* ); *Doe v. U.S. Dep't of Justice,* 753 F.2d 1092, 1101 (D.C.Cir.1985).

Thus, because I agree that the case should be held in abeyance pending the Commission's adjudication of appellant's administrative complaint, I concur in Judge Starr's opinion for the court.