**UNITED STATES of America, Plaintiff,**

**v.**

**27.09 ACRES OF LAND, MORE OR LESS, SITUATED IN THE TOWN OF HARRISON AND THE TOWN OF NORTH CASTLE, COUNTY OF WEST-CHESTER, STATE OF NEW YORK, the County of Westchester, and Unknown Others, Defendants,**

**and**

**Purchase Environment Protective Association, Inc., and Town of Harrison, Defendants–Intervenors.**

**No. 88 Civ. 1805(MEL).**

United States District Court, S.D. New York.

Dec. 7, 1992.

See also 760 F.Supp. 345.

Otto G. Obermaier, U.S. Atty. for the S.D. of N.Y., New York City, for plaintiff; Diana J. Hassel, Asst. U.S. Atty., of counsel.

Davis, Polk & Wardwell, New York City, for defendant–intervenor The Purchase Environmental Protective Ass'n, Inc.; Robert F. Wise, Jr., of counsel.

LASKER, District Judge.

The Purchase Environmental Protective Association, Inc. ("PEPA") moves for an award of attorneys fees and expenses in the amounts of $207,244.00 and $21,905.15 respectively under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412(d).

The motion arises in the aftermath of litigation which began in March 1988 in connection with an attempt by the United States Postal Service (the "Postal Service") to locate a new general mail facility and vehicle maintenance facility at a site near the Westchester County Airport. The selection of the site generated substantial controversy in response to which the Postal Service published four Environmental Assessments ("EA"s) and two "Wetlands Impact Reports" over the course of nearly two and a half years. The final EA and its appendices consisted of seven volumes containing extensive discussion of many possible environmental effects of the proposed facility. It included discussion of the anticipated impact of the project on the Kensico Reservoir, wetlands areas on the site, traffic in the area, and wastewater disposal and water supply, as well as the project's cumulative environmental impact in conjunction with other nearby land uses. The final EA, like its predecessors, concluded that a full Environmental Impact Statement ("EIS") was not required because the project would have "no significant impact ... on the environment." 39 C.F.R. § 775.-6(a)(2).

I.

The EAJA permits parties who successfully challenge government actions in the courts to recover the costs of litigation in non-tort civil actions, including proceedings for judicial review of agency action, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Congress enacted the EAJA in 1980 as an experiment to ameliorate the problem "that certain individuals ... may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4984.

When Congress reenacted the EAJA in 1985 as a permanent measure, the phrase "position of the United States", left undefined in the original act, was defined to include both "the position taken by the United States in the civil action," as well as "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D).

> Congress made clear that for EAJA purposes, a court should inquire into both the underlying agency determination affecting the party, as well as the Government's litigation strategy in defense of that determination. *See* H.R.Rep. No. 99–120, 99th Cong., 1st Sess. 12, *reprinted in* 1985 U.S. Code Cong. & Admin.News 132, 141.

*Smith by Smith v. Bowen*, 867 F.2d 731, 734 (2d Cir.1989).

■ The government's position is "substantially justified" if it is " 'justified in the substance or in the main'—that is, justified to a degree that could satisfy a reasonable person" or it has a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1987). "To be 'substantially justified' means, of course, more than merely undeserving of sanction for frivolousness ..." *Id.* at 566, 108 S.Ct. at 2550. The test is "essentially one of reasonable-

ness," H.R.Rep. No. 1418 at 10, *reprinted in* 1980 U.S.C.C.A.N. at 4989. In assessing whether the government's position was substantially justified, the Court of Appeals has examined the clarity of the governing law, the foreseeable length and complexity of litigation, and the consistency of the government's position. *Dubose v. Pierce,* 761 F.2d 913, 918 (2d Cir.1985) (factors aid analysis in "borderline cases"). The government bears the burden of demonstrating the justification for its position, *Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081, 1085 (2d Cir.1983).

The "special circumstances" exception to the EAJA is a "'safety valve' [which] ... gives the court discretion to deny awards where equitable considerations dictate an award should not be made." H.R.Rep. No. 1418, at 11, *reprinted in* 1980 U.S.C.C.A.N., at 4990. It has been held that such special circumstances arise when a party that is otherwise eligible for EAJA fees joins non-eligible parties who are fully willing and able to pursue the action against the United States on their own. In that situation the eligible party takes a free ride through the judicial process at the government's expense and an award is unjust. *Louisiana v. Lee,* 853 F.2d 1219, 1225 (5th Cir.1988); *Sierra Club v. U.S. Army Corps of Engineers,* 776 F.2d 383 (2d Cir.1985) (limiting award based on ratio of eligible to non-eligible parties).

PEPA's application under the EAJA is denied because the government's overall position was substantially justified and because PEPA acted only in conjunction with three governmental non-eligible parties who vigorously pressed the challenge to the Postal Service's action regardless of PEPA's intervention.

## II.

PEPA contends that the government's position was not substantially justified because the Court (i) overruled the Postal Service's determination that an EIS was not necessary, finding it to be arbitrary and capricious, (ii) found that the Postal Service had violated certain wetland regulations, and (iii) granted PEPA's interven-

tion in the action over the government's opposition.

This analysis is an oversimplification. The litigation had two phases. Initially, PEPA contended that the Postal Service had to comply with the environmental review process required by the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA") before condemnation. The government prevailed on that pivotal issue and on every other issue presented at that time with the exception of PEPA's motion to intervene, which was granted, and the question of whether the Postal Service had violated its own wetlands regulations. *U.S. v. 27.09 Acres of Land,* 737 F.Supp. 277, 288–89 (S.D.N.Y.1990) (hereinafter *"27.09 Acres I"*).

*27.09 Acres I* was filed on May 15, 1990 and in December of that year the law firm of Davis Polk & Wardwell was substituted as attorney of record for PEPA and Sidley & Austin withdrew. The fees and expenses PEPA seeks to recover under the EAJA pertain solely to its representation by Sidley & Austin prior to this substitution. Thereafter PEPA moved for a preliminary injunction barring the Postal Service from proceeding with construction of the facility until an EIS had been prepared. PEPA prevailed. In reversing the Postal Service's determination that the project would have no significant environmental impact and that no EIS need therefore be prepared required this Court found that the agency's action had been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" pursuant to the Administrative Procedure Act. 5 U.S.C. § 706(2)(A). *U.S. v. 27.09 Acres of Land,* 760 F.Supp. 345, 348 (S.D.N.Y.1991) (hereinafter *"27.09 Acres II"*). After the entry of the preliminary injunction, the Postal Service determined to pursue an alternate site and to reconvey the airport site to the County.

The issues on which PEPA prevailed in *27.09 Acres I* were entirely secondary to the gravamen of that decision and in no way furthered the aim of voiding the Postal Service's condemnation of the site on the claim by the County of Westchester and

PEPA that the Service's failure to perform the requirements of NEPA prior to condemnation was fatal to the take-over. Neither the fact that the Court permitted PEPA's intervention, nor its determination that the Postal Service had violated certain wetland regulations had any practical impact on the principal result that the Postal Service did not have to comply with the environmental review process before condemnation.

PEPA's contention that the government's position was not substantially justified because the Court overruled the Postal Service determination that an EIS was not necessary arises out of *27.09 Acres II.* There is at least a serious question whether PEPA can support its claim for costs under the EAJA by reference to the government's position at a time in the litigation when it was no longer represented by Sidley & Austin for whose services it seeks reimbursement. While the Court of Appeals has held that "it is inappropriate to examine separate parts of the litigation to determine whether the government's position in each phase was justified," *Trichilo v. Secretary of Health and Human Services,* 832 F.2d 743, 745 (2d Cir.1987), it is not clear whether that prevents limiting the inquiry to the period for which PEPA actually seeks reimbursement. However, even if that is the import of *Trichilo,* PEPA does not win on this issue: as discussed below, the Postal Service's decision not to prepare a full EIS was substantially justified.

### i. *Postal Service's Failure to Prepare EIS.*

██ PEPA contends that the Postal Service's position that an EIS was not necessary was "manifestly unreasonable" and therefore lacked substantial justification. PEPA further contends that this conclusion is compelled by this Court's determination that the Postal Service's position on this issue was "arbitrary and capricious." PEPA is wrong in both respects.

In *Cohen v. Bowen,* 837 F.2d 582 (2d Cir.1988), the Court of Appeals held that the government's position was "substantially justified" despite the fact that the

agency's position had been determined to be "not supported by substantial evidence." The court stated that:

[The District Court judge] noted that since a social security appeal usually will be reversed only if the court finds the Secretary's position to lack substantial evidence, the practical effect of viewing "substantial evidence" and "substantially justified" as synonymous would be that attorney fee awards would become automatic in virtually all successful social security appeals. This would be contrary to the clearly expressed intent of Congress.

*Cohen,* 837 F.2d at 586. The Court of Appeals relied on the House Report which states that the substantial justification standard was:

intended to caution agencies to carefully evaluate their case and not to pursue those which are weak or tenuous. At the same time, the language of the section protects the government when its case, though not prevailing, has a reasonable basis in law and fact.

H.R.Rep. No. 1418, at 14, *reprinted in* 1980 U.S.C.C.A.N., at 4993.

In *Federal Election Commission v. Political Contributions Data, Inc.,* 807 F.Supp. 311 (S.D.N.Y.1992), the district court found the government's position to have been "substantially justified" despite the fact that the Court of Appeals had found the agency's interpretation of the relevant statute to have been "unreasonable." Judge Kram explained that:

[I]t is a well-established rule that a court defers to an agency's interpretation unless it finds it to be "unreasonable." Thus using [movant's] analysis, any decision overruling an agency's interpretation would automatically result in the Government paying attorney's fees and expenses to the other party. As *Spencer* concluded, however, Congress did not intend [the EAJA] as an automatic fee-shifting device. *Spencer v. N.L.R.B.,* 712 F.2d [539] at 550 [(D.C.Cir.1983)]. Accordingly, this Court may not terminate its inquiry with the Court of Appeals' conclusion that the FEC's interpre-

tation was "unreasonable," but rather the Court must examine the legal and factual basis for the FEC's determination. . . .

*Federal Election Commission,* 807 F.Supp. at 317.

These decisions demonstrate that it does not follow from the judicial reversal of an agency determination that it necessarily lacked substantial justification for EAJA purposes. The government can still meet its burden of proof by showing that its position had a reasonable basis in law and fact. For EAJA purposes a determination that the agency action was arbitrary and capricious does not automatically establish that the agency's position was fundamentally unreasonable or frivolous, but that it was unreasonable in a particular way: in this case that the determination was procedurally unreasonable. *See Stryker's Bay Neighborhood Council, Inc. v. Karlen,* 444 U.S. 223, 227, 100 S.Ct. 497, 500, 62 L.Ed.2d 433 (review is "essentially procedural"); *Town of Orangetown v. Gorsuch,* 718 F.2d 29, 35 (2d Cir.1983) (review is limited to compliance with procedural requirements of NEPA).[1]

PEPA's second argument for its claim that the Postal Service's decision not to prepare an EIS lacked substantial justification is that the governing law clearly did not support the government on this issue. In particular, PEPA contends that the general standards for determining whether an EIS was required were clear and that, in fact, the Postal Service had lost three earlier cases involving its refusal to prepare an EIS with respect to construction of facilities similar to the proposed Westchester facility. *See Rochester v. United States Postal Service,* 541 F.2d 967 (2d Cir.1976); *Maryland–National Capitol Park and Planning v. United States Postal Service,*

487 F.2d 1029 (D.C.Cir.1973); *Morgan v. United States Postal Service,* 405 F.Supp. 413 (W.D.Mo.1975). PEPA alleges that the position taken by the Postal Service is accordingly distinguishable from the government's position in two cases where courts have found it to have been substantially justified because of the lack of clear precedent. *Federal Election Commission,* 807 F.Supp. 311; *Southern Oregon Citizens v. Watt,* 556 F.Supp. 155, 157 (D.Or.), *modified,* 720 F.2d 1475 (9th Cir.1983).

The government replies that "the environmental and technical issues raised were clearly unusually complex" and that at least some of the issues raised in this action were ones in which "case law offer[s] little illumination," *27.09 Acres II,* 760 F.Supp. at 353.[2]

Of course, the more clearly established the governing law was at the time of the agency's determination, and the more clearly it dictated a result in favor of the private litigant, the less likely it is that the government's position was reasonable. *Dubose,* 761 F.2d at 918; *Spencer,* 712 F.2d at 559. However, the precedents did not provide the Postal Service the clear guidance contended for by PEPA. Quite apart from the fact that the most recent of these decisions is sixteen years old, only *Rochester,* 541 F.2d 967, could arguably have pointed the way for the Postal Service in the present case. The *Morgan* court, 405 F.Supp. 413, never identified the particular shortcomings of the Postal Service's finding that an EIS did not have to be prepared, and in *Maryland–National Capitol Park and Planning,* 487 F.2d 1029, the court remanded for further investigation by the District Court. In *Rochester,* 541 F.2d 967, the court held that the project in question

---

**1.** Moreover, a number of circuits have suggested that the difference between the 'arbitrary and capricious' and 'reasonableness' standards is not of great pragmatic consequence. *See Manasota–88, Inc. v. Thomas,* 799 F.2d 687, 692 n. 8 (11th Cir.1986); *River Road Alliance Inc. v. Corps of Engineers of United States Army,* 764 F.2d 445, 449 (7th Cir.1985). However, neither the Court of Appeals of this Circuit nor the Supreme Court have acceded to this proposition. *Marsh v. Oregon Natural Resources Coun-*

*cil,* 490 U.S. 360, 377 n. 23, 109 S.Ct. 1851, 1861, n. 23, 104 L.Ed.2d 377 (1989).

**2.** PEPA correctly points out that the Court's comment about the lack of guiding case law referred to the adequacy of certain mitigation measures to prevent possible contamination to drinking water. *27.09 Acres I,* 760 F.Supp. at 353.

required the preparation of an EIS because of:

> (1) increasing commuter traffic by car ...; (2)(a) [the] loss of job opportunities for inner-city residents ... or (b) their moving to the suburbs ... possibly leading ... [to] "both economic and physical deterioration in the [downtown Rochester] community"; and (3) ... abandonment of the downtown [Main Post Office] which could ... contribute to an atmosphere of urban decay and blight ...

*Rochester*, 541 F.2d at 973 (citation omitted). However, apart from the traffic concerns, these factors bear no resemblance to the shortcomings that prompted this Court to require an EIS in the present case.

Moreover, NEPA regulations make clear the individuality of determinations about the significance of the environmental impact of a proposed action on the environment:

> [T]he significance of an action must be analyzed in several contexts such as society as a whole (human, national), the affected region, the affected interests, and the locality. Significance varies with the setting of the proposed action. For instance, in the case of a site-specific action, significance would usually depend upon the effects in the locale rather than in the world as a whole. Both short- and long-term effects are relevant.

40 C.F.R. § 1508.27(a). Accordingly, it cannot be concluded that the Postal Service should have known from prior decisions that an EIS would have to be prepared in this case. It was perfectly reasonable for the agency to believe that its voluminous studies and the support of substantial expert testimony eliminated the necessity for further expense of public funds and the postponement of completion of the project which the conduct of an EIS would have required.

### ii. *Compliance with Wetlands Regulations.*

■ In *27.09 Acres I*, the Court found that the Postal Service had failed to comply with a number of its own wetland regulations. In particular the Court found that:

> [t]he Postal Service clearly did not provide the required public notice before acquiring the County parcel by condemnation. The Postal Service's argument that [the public notice requirement] does not apply to a situation in which wetlands are discovered only after condemnation is unpersuasive. Moreover, no explanation has been offered as to why these wetlands were not detected during the preparation of the first two environmental assessments of the Airport site and why they were only inadvertently detected during soil tests conducted by the contractor.

*27.09 Acres I*, 737 F.Supp. at 288.

PEPA correctly contends that the Postal Service's position was not substantially justified with regard to this peripheral issue in *27.09 Acres I*. The Postal Service "clearly did not provide the required notice," offered "no explanation ... as to why these wetlands were not detected" and the government has not now offered an explanation of these lapses. However, it is important to note that this determination had no practical impact on the case because the agency had not determined whether to site the facility in the wetlands area at that time. The resolution of the wetlands issue was therefore deferred and the condemnation was not set aside. *27.09 Acres I*, 737 F.Supp. at 288–89.

### iii. *Postal Service's Opposition to PEPA's Intervention.*

■ PEPA contends that the government's opposition to intervention by PEPA "in the face of circumstances and precedents strongly supporting such intervention" was not substantially justified.

In *27.09 Acres I* the government argued that PEPA, as a third party to the condemnation proceeding, did not have a direct interest in the condemnation and therefore could not intervene as of right. *United States v. 36.96 Acres of Land*, 754 F.2d 855 (7th Cir.1985); *United States v. 36.46 Acres of Upland*, 113 F.R.D. 124 (E.D.N.Y. 1986). In addition, the government contended that PEPA's interests were already adequately represented by the County of Westchester and that nothing would be

gained by allowing the intervention of PEPA as an additional party to an already complex litigation.

These arguments were reasonable and they undermine PEPA's charge, which in any event is not further substantiated, that the "circumstances and precedents strongly support[ed] ... intervention." Although the government did not prevail on that issue, it was not "so one sided as to render [the government's] position clearly unjustifiable." *Dubose*, 761 F.2d at 919. Moreover, permissive intervention is a matter of judicial discretion, and although it is frequently granted, it is also frequently denied. It was reasonable for the government to ask the Court to exercise its discretion in the government's favor in order to avoid complicating the case unnecessarily by the addition of a party whose interests were already being protected by others quite capable of carrying the ball.

### III.

■ The government contends that PEPA should not recover because "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). In particular, the government contends that recovery would be unjust because PEPA was joined in this action by other parties who are ineligible under the EAJA and there is no indication that their vigorous challenge depended on the participation of PEPA. The government relies on *Louisiana v. Lee*, 853 F.2d 1219, 1225 (5th Cir.1988) for the proposition that "[i]f the party ineligible for fees is fully willing and able to prosecute the action against the United States, the parties eligible for EAJA fees should not be able to take a free ride through the judicial process at the government's expense."

PEPA responds that *Louisiana v. Lee* is contrary to the law of this Circuit and that, even if that decision were applicable, PEPA should recover because, instead of getting a "free ride" from the other parties, PEPA was in fact the "prime mover" in the litigation.

In *Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383 (2d Cir.1985) a divided Court of Appeals overruled the dis-

trict court's holding that the ineligibility under EAJA of one of twelve plaintiffs was attributable to all the plaintiffs and that therefore none of the plaintiffs could recover. Judge Meskill's dissent, which upheld the district court's argument, was adopted by *Louisiana v. Lee* on which the government relies. Judge Meskill wrote that:

The EAJA was passed for a specific purpose; to ensure that parties would not be prevented from contesting government action simply because they could not afford to litigate the matter. When a group of twelve plaintiffs, one of whom has a networth of over $1 million [and is thus ineligible], join together, congressional concern about access to the courts is not implicated. Indeed, it seems incongruous to hold that if the ineligible plaintiff alone challenged [the government], fees could not be awarded under the EAJA, but because the ineligible plaintiff was joined by less wealthy friends, fees may be awarded.

*Sierra Club*, 776 F.2d at 394 (citation omitted); *Louisiana v. Lee*, 853 F.2d at 1223–24.

The majority in *Sierra Club*, agreed with Judge Meskill that the non-eligibility under the EAJA of non-applicant parties should be considered in determining an otherwise eligible applicant's recovery, but that the effect should merely be to reduce recovery based on the ratio of eligible parties to total parties, in *Sierra Club* eleven to twelve.

In the case at hand, PEPA was joined by three EAJA non-eligible parties, the County of Westchester, the Town of Harrison, and in the latter part of the litigation, the City of New York. Thus, even on a straightforward transposition of the majority's holding in *Sierra Club*, PEPA would only be entitled to ¼ of its costs. However, the particular circumstances of PEPA's application make even such a recovery unjust.

The purpose of the EAJA is to ensure that unreasonable government action does not go unchallenged simply because of the cost of litigation. In addition, "[t]he EAJA, as a waiver of sovereign immunity,

must be strictly construed and not enlarged beyond what a fair reading of the language requires." *Sierra Club*, 776 F.2d at 394 (Meskill, J. dissenting) (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983)). Here, the Postal Service's actions were challenged by the City of New York, the County of Westchester and the Town of Harrison in addition to PEPA and, regardless of PEPA's activities, the other parties vigorously pressed their challenge to the Postal Service's action. These special circumstances, in combination with the determination that the Postal Service's position was substantially justified in all respects except as to the wetlands issue, dictate a denial of PEPA's application.

The motion is denied.

It is so ordered.