**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**27.09 ACRES OF LAND, more or less, situated in The Town of Harrison and The Town of North Castle; The County of Westchester, and unknown others, Defendants,**

**Purchase Environmental Protective Association, Inc., Defendant–Intervenor–Appellant,**

**Town of Harrison, Defendant–Intervenor.**

No. 1539, Docket 93–6031.

United States Court of Appeals, Second Circuit.

Argued May 19, 1993.

Decided July 27, 1993.

Donald W. Stever, Jr. (Sidley & Austin, New York City, of counsel), for defendant-intervenor-appellant.

Diana J. Hassel, Asst. U.S. Atty., New York City (Roger S. Hayes, U.S. Atty., S.D.N.Y., Paul K. Milmed, Asst. U.S. Atty., of counsel), for plaintiff-appellee.

Before: WINTER and JACOBS, Circuit Judges, and MUKASEY, District Judge.*

JACOBS, Circuit Judge:

Defendant-intervenor-appellant Purchase Environmental Protective Association, Inc. (the "Association") appeals from an order of the United States District Court for the Southern District of New York (Lasker, *J.*), 808 F.Supp. 1030 (1992), denying the Association's motion for an award of fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412 (Supp.1993) ("EAJA"). The Association, a group of homeowners and merchants in Purchase, New York, had sought reimbursement under EAJA for litigation expenses it incurred as one of four parties invoking environmental laws to challenge the planned construction nearby of a new postal facility for Westchester County, New York. EAJA provides that, in a non-tort civil action between the United States and eligible parties, "a court shall award to a prevailing party other than the United States fees and other expenses ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

In a thoughtful decision, the district court denied an award because it found that (a) the United States' position in this litigation was "substantially justified" within the meaning of the statute; and (b) the active participation on the same side as the Association by units of local government that are not eligible for awards under EAJA, 28 U.S.C. § 2412(d)(2)(B), constituted a special circumstance making a fee award to the Association unjust. 808 F.Supp. at 1032. We vacate the district court's order and remand this matter for further consideration because no final judgment has been entered in this action terminating it for the purposes of EAJA, and therefore the Association's EAJA application was premature.

## BACKGROUND

In March 1988 the United States filed a complaint in condemnation seeking to acquire land owned by the County of Westchester ("Westchester") on which the United States

* Honorable Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation.

Postal Service ("Postal Service") planned to build a new general mail facility and vehicle maintenance facility. The condemned land, located near the Westchester County Airport, has been referred to by the parties as the "Airport Site." As the district court noted:

> The selection of the site generated substantial controversy in response to which the Postal Service published four Environmental Assessments ("EA"s) and two "Wetlands Impact Reports" over the course of nearly two and a half years. The final EA and its appendices consisted of seven volumes containing extensive discussion of many possible environmental effects of the proposed facility.

808 F.Supp. at 1031.

The Association and the Town of Harrison ("Harrison") promptly moved to intervene in the condemnation proceeding as Westchester's co-defendants. The Association and the two governmental entities sought similar relief, chiefly an order enjoining the United States from condemning the Airport Site until the Postal Service had complied with the requirements set forth in the National Environmental Policy Act, 42 U.S.C. §§ 4321–4347 (1988) ("NEPA"), and with the Postal Service's own wetlands regulations. The City of New York commenced a separate action to protect its watershed and drinking water resources, *City of New York v. United States Postal Service*, 760 F.Supp. 345 (S.D.N.Y.1991), which was deemed a related case. Thus by February 1991, Westchester, Harrison, the Association and the City of New York were aligned in these proceedings opposing the planned post office project.[1]

This litigation proceeded in two distinct phases. In the initial phase, the Association and Harrison pressed their motions to intervene and, along with Westchester, moved for preliminary injunctive relief and for partial summary judgment. The central issue raised by the substantive motions was whether the Postal Service was required to comply with all environmental review procedures be-

fore condemning the Airport Site. Resolution of this issue was delayed for over a year by stipulation of the parties and by passage of a bill in Congress that restricted funding for the facilities until the Postal Service considered alternative sites and prepared additional environmental evaluations. On May 15, 1990, the district court granted permissive intervention by the Association and Harrison, but denied the substantive motions in their entirety. *United States v. 27.09 Acres of Land*, 737 F.Supp. 277 (S.D.N.Y.1990) ("*27.09 Acres I*").

Throughout this initial phase in the litigation, the Association was represented by the firm of Sidley & Austin. Having exhausted its litigation fund without obtaining relief, the Association terminated Sidley & Austin's engagement and substituted as counsel the Association's president, a lawyer who has been supplying his services without charge. Sidley & Austin's fees for representing the Association in this phase of the litigation are the fees that the Association now seeks to recover from the United States under EAJA.

After the issuance of *27.09 Acres I*, the litigation entered a second phase, during which the Association became less active, joining in the submissions of Harrison and Westchester and relying on the experts retained by those parties. The Postal Service proceeded to perform the mandates of NEPA and its own regulations and (in October 1990) issued its final Environmental Assessment. The Postal Service also issued a finding that the proposed postal facilities would have no significant impact on the environment and concluded that a full Environmental Impact Statement ("EIS") was not required. In early 1991, Westchester, Harrison and the Association, now joined by the City of New York, moved for a preliminary injunction barring construction of the proposed facilities until the Postal Service prepared an EIS. On March 28, 1991, the district court granted this motion, holding that the movants "establish[ed] likely success in

---

1. The Association also filed a separate action against the Postal Service seeking to block the planned condemnation of a parcel of land owned by the State of New York and adjoining the Airport Site. *See Purchase Environmental Protec-* *tive Association, Inc. v. United States Postal Service*, 737 F.Supp. 277 (S.D.N.Y.1990). That action was dismissed for lack of ripeness. *See United States v. 27.09 Acres of Land*, 737 F.Supp. 277, 290 (S.D.N.Y.1990) ("*27.09 Acres I*").

proving that the [Postal] Service's finding of no significant impact was arbitrary and capricious." *United States v. 27.09 Acres of Land,* 760 F.Supp. 345, 355 (S.D.N.Y.1991) (*"27.09 Acres II"*).

On June 17, 1991, the United States filed a Notice of Appeal seeking interlocutory review of the injunction issued pursuant to *27.09 Acres II.* Soon thereafter, however, the Postal Service changed its construction plans and decided to build the required facilities on an already developed parcel of land which had just become available. On October 10, 1991, the United States abandoned its appeal. On October 15, 1991, the Association sought to renew its motion for summary judgment. (Why this initiative was taken is unclear; in any event, the record indicates that the Association did not pursue it.)

Since the Postal Service had no further intention of developing the Airport Site, it negotiated with Westchester to return the property and recover the money that the Postal Service had paid for it. The Federal Aviation Administration ("FAA") also entered the negotiations because of its interest in having the Airport Site dedicated solely to airport use. On November 19, 1991, the Postal Service, Westchester and the FAA entered into a Memorandum of Understanding effecting these objectives, and deeds were executed transferring the Airport Site back to Westchester County.

On June 15, 1992, the United States circulated among the parties a Stipulation and Order of Settlement and Dismissal of the condemnation action. The proposed stipulation contained a provision that precluded costs and attorneys' fees, and that would therefore preclude any EAJA application. Westchester executed the stipulation, but Harrison and the Association did not. The record on appeal does not indicate what effect, if any, was given the partially executed stipulation. According to the docket sheet, no such stipulation and order was filed.

On June 29, 1992, pursuant to procedures of the Administrative Office of the United States Courts, the Chief Judge of the district directed the closing of this and other superannuated cases in a "Minute Order" which reads in its entirety:

The attached list of cases having been pending for over three years, all presently contemplated proceedings having been completed, and there having been no action for over twelve months, there appears to be no further reason at this time to maintain these files as open for statistical purposes, the Clerk is instructed to complete a JS–6 closing report for each case.

Nothing contained in this minute order shall be considered a dismissal or disposition of these matters, and should further proceedings in them become necessary or desirable, any party may initiate it in the same manner as if this minute order had not been entered.

Other than the Association's abandoned motion to renew its request for summary judgment, the Minute Order accurately recorded the absence of any activity in this action during the preceding year.

On August 7, 1992, the Association submitted an application under EAJA for an award of attorneys' fees and expenses totalling $229,149.15. This claim represents charges by Sidley & Austin during its representation of the Association from the beginning of this action until July 1990, shortly after the district court denied the Association's motion for substantive relief in *27.09 Acres I.* The United States opposed the application on the grounds, *inter alia,* that its position was fair ground for litigation, that it prevailed in the phase of the litigation in which the requested fees were incurred, and that the Association was a supernumerary in the phase of the proceedings in which relief against the United States was granted. On December 7, 1992, the district court denied the Association's claim for an EAJA award "because the government's overall position was substantially justified and because [the Association] acted only in conjunction with three governmental non-eligible parties who vigorously pressed the challenge to the Postal Service's action regardless of [the Association's] intervention." 808 F.Supp. at 1032.

## DISCUSSION

■ We have laid out the procedural history of this action in some detail because it

presents the issue of whether the Association's EAJA application was premature and therefore not justiciable. Although the parties did not contest this issue below or on this appeal, we must address it:

[E]very federal appellate court has a special obligation to "satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review," even though the parties are prepared to concede it.

*Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) (quoting *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934)).

█ Section 2412(d)(1)(B) of EAJA states that a party seeking an award must submit its application "within thirty days of final judgment in the action." Section 2412(d)(2)(G) defines "final judgment" as "a judgment that is final and not appealable and includes an order of settlement." The district court's subject matter jurisdiction here is governed by the Supreme Court's decision in *Melkonyan v. Sullivan,* —— U.S. ——, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), which interpreted EAJA's "final judgment" requirement to mean "a judgment rendered by a court that terminates the civil action for which EAJA fees may be received. The 30-day EAJA clock begins after the time to appeal that 'final judgment' has expired." *Id.* at ——, 111 S.Ct. at 2162; *see Federal Election Comm'n v. Political Contributions Data, Inc.,* 995 F.2d 383, 385 (2d Cir.1993). In *Melkonyan,* the Supreme Court described as premature an EAJA application filed prior to entry of a "final judgment," and found that the district court had no authority to hear the application absent entry of a "final judgment." *Melkonyan,* —— U.S. at ——, 111 S.Ct. at 2166.

█ The record on this appeal reflects neither entry of a final judgment, nor the docketing of a settlement order or any order terminating this action. The June 29, 1992 Minute Order closed the case administratively for "statistical purposes," but does not appear to have achieved finality of the type required by EAJA and *Melkonyan. Cf. Shalala v. Schaefer,* —— U.S. ——, ——, 113

S.Ct. 2625, 2628, 125 L.Ed.2d 239 (1993). To the contrary, the Minute Order states it should not "be considered a dismissal or disposition" of this action. Thus, it appears that no "final judgment" for EAJA purposes was ever entered in this action. The Association's EAJA application was therefore premature and the district court lacked jurisdiction to decide it.

█ When asked on oral argument whether the EAJA application was premature, the United States stated that it decided not to contest the fee application as premature because there was no possibility of further action in this case. A party, however, cannot waive a defect in a federal court's subject matter jurisdiction. "[T]he parties may not confer subject matter jurisdiction on the court by consent." *Cable Television Ass'n of N.Y., Inc. v. Finneran,* 954 F.2d 91, 94 (2d Cir.1992); *see Bender,* 475 U.S. at 541, 106 S.Ct. at 1331.

Because the district court was without subject matter jurisdiction to consider the Association's fee application, its decision on that issue must be vacated. The parties may seek to have the district court enter a "final judgment," and if it does so, subsequent proceedings may be guided by *Melkonyan:*

[T]he District Court may determine that the application [petitioner] has already filed is sufficient. Alternatively, petitioner can easily reapply for EAJA fees following the District Court's entry of a final judgment. In either case, petitioner will not be prejudiced by having filed prematurely.

—— U.S. at ——, 111 S.Ct. at 2166. The parties owe the district court such efforts as needed to achieve formal closure of legal proceedings; they cannot expect that mooted cases can be parked on the docket for possible further use in unforeseen circumstances or that the district court by administrative order will tie up litigants' loose ends by dismissing open cases on its own motion.

## CONCLUSION

We vacate the district court order denying an EAJA award and remand for further proceedings consistent with this opinion. We direct the Clerk of this Court that any fur-

ther appeal with respect to an EAJA application in this case should be assigned to this panel and may be heard on the present papers.